OPINION OF THE COURT
Judith J. Gische, J.
*329 On December 7, 2004, this court rendered an interim order directing defendant to pay $475,000 toward the legal and professional fees already incurred by plaintiff in this divorce action. At the time the fees were awarded, the case was mid-trial, with 25 days of testimony having already been completed. The award was significantly less than what plaintiff claimed were her actual arrears. The court’s decision expressly provided that the fee award was subject to reallocation at trial and could ultimately be chargeable to plaintiffs share of equitable distribution.
Following the entry of the December 7, 2004 order, defendant filed a notice of appeal and posted the sum of $475,000 with the County Clerk of New York. Pursuant to CPLR 5519 (a) (2), posting the amount of the award with the County Clerk entitled defendant to an automatic stay of this court’s December 7, 2004 order, pending his prosecution of the appeal.
Plaintiff now moves pursuant to CPLR 5519 (c) to have this court vacate the automatic stay. Defendant opposes the relief requested.
As a preliminary matter, the court holds that, in general, it has the discretion to vacate, limit or otherwise modify an automatic stay obtained under CPLR 5519 (a) (2). CPLR 5519 (c) states in pertinent part:
“The court from or to which an appeal is taken . . . may vacate, limit or modify any stay imposed by subdivision (a), subdivision (b) or this subdivision, except that only the court to which an appeal is taken may vacate, limit or modify a stay imposed by paragraph one of subdivision (a).”
The fact that the stay is automatic does not remove it from the purview of the court’s discretion to otherwise vacate, limit or modify the stay. Moreover, the statute expressly gives the court issuing the order appealed from such discretion. The sole exception, not applicable here, is when the appealing body is a state authority. In that event the automatic stay may still be vacated, limited or modified, but only by the court to which the appeal is taken. Given the express language of the statute, defendant’s argument, that there are no reported cases holding that this court may modify an automatic stay, is unpersuasive.
The court finds that in the exercise of appropriate discretion, the automatic stay obtained in this case should be vacated and the monies posted with the County Clerk should be immediately released to plaintiff in accordance with the December 7, 2004 order.
*330 The Court of Appeals and especially the Appellate Division of this department have recognized the mischief achieved in divorce actions when the nonmonied spouse, who cannot pay attorney’s fees on an ongoing basis, is denied applications for interim fees along the way. (Frankel v Frankel, 2 NY3d 601 [2004]; Gober v Gober, 282 AD2d 392 [1st Dept 2001]; Charpié v Charpié, 271 AD2d 169 [1st Dept 2000]; see also Acito v Acito, 10 AD3d 623 [2d Dept 2004]; Waldeck v Waldeck, 138 AD2d 373 [2d Dept 1988].) Interim legal fees may be necessary so that “the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant’s wallet.” (O’Shea v O’Shea, 93 NY2d 187, 190 [1999].)
In the recent case of Frankel v Frankel (supra), the Court of Appeals noted that “frequent interim counsel fee awards would prevent accumulation of bills” and “[t]he practice of many judges to defer [pendente lite counsel fee applications] to the trial court essentially delays the awarding of fees until final settlement or judgment, and often compromises the nonmonied spouse’s ability to adequately litigate the case.” (Frankel v Frankel, supra at 605 n 1 [internal quotation marks omitted].) The Court of Appeals further noted that the accumulation of legal fees can leave “both [a] client and attorney ... in limbo” during a protracted divorce action and “drive a wedge between [them].” (Id.) By appealing a decision awarding a nonmonied spouse interim counsel fees, and then bonding the award to stay enforcement pending appeal, a monied spouse can compromise a nonmonied spouse’s ability to litigate the ongoing case proceeding at the trial level. The effect of the stay is to prevent the nonmonied spouse from receiving money to pay professionals as the case continues. Thus, the monied spouse achieves indirectly what it could not do directly, depriving the nonmonied spouse of the ability to pay for representation while the case is ongoing. Since appeals need not be perfected for up to nine months in the First Department (22 NYCRR 600.11), this strategy may be used to obtain an unfair litigation advantage that the underlying interim award was intended to prevent in the first instance.
In the case at bar, the appeal will not be heard until the June 2005 term of the Appellate Division, which is six months after the court’s initial decision granting interim fees. While the appeal is pending, this case has gone forward at the trial level.. There have been additional trial dates and counsel have prepared substantial affidavits in lieu of direct examination of the *331 parties.[1] The court is presently awaiting posttrial memorandums of law, which involve enormously complicated financial issues. More recently, plaintiff has moved to amplify the trial record because in a subsequent related tax court proceeding, defendant testified on a material, disputed issue in this case inconsistently.[2] Thus, while this appeal has been pending, plaintiff has been incurring substantial additional attorneys’ fees.
Most important to this court’s decision is that defendant will not be prejudiced one iota if the stay is vacated.
The automatic stay provisions that apply to orders requiring the payment of money are contingent on the posting of cash or bond or some other instrument to ensure that if the order is upheld, money is available to satisfy the order. With equal importance the stay ensures that if appellant is successful, no problems will occur in trying to recoup money already paid out to plaintiff. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5519:l, at 221.)
At bar, without the necessity of a stay, defendant will have no problem in recovering monies he has advanced for legal fees, if he should prevail on the appeal. While the parties dispute the exact value of the marital estate, it is, by all accounts, a multimillion dollar estate. According to defendant’s own statement of proposed disposition, the value of the assets held by the parties is close to $28 million.[3] Since the underlying divorce involves the distribution of assets between the parties, there is no doubt that if defendant prevails on his appeal, he can recoup from plaintiffs distributive award the $475,000 if it is given to the plaintiff at this time.
Moreover, clearly the interim award is affordable. Indeed, defendant posted the entire amount of the award in cash, rather *332 than bond it. This, in itself, indicates that he has both the resources and the liquidity to pay the interim award at this time.
It is important to note that while defendant seeks to place a restriction on plaintiffs ability to pay her experts and her attorneys as this case proceeds, he feels no such compunction to restrict himself. Since this award was made, defendant has made at least two applications to this court for permission to hire additional experts to revalue Wechsler and Co., Inc. based on a different valuation date. In each of these applications no claim was made that he could not or would not pay such experts.[4]
In short, this case presents a quintessential scenario, which concerns both trial and appellate courts, about the outcome of a divorce litigation being influenced by one party’s greater ability to bankroll it. By taking advantage of the automatic stay provision in CPLR 5519 (a), defendant has done indirectly what he could not do directly, that is, prevent the plaintiff from receiving interim professional fees. Since the automatic stay provision is completely unnecessary to protect defendant’s rights, even were he to succeed on appeal, and it greatly prejudices plaintiff to have to wait for the money awarded, the stay is vacated.
Accordingly, the court grants the motion. The automatic stay is vacated and the monies now held by the New York County Clerk are to be released to plaintiffs attorneys in accordance with this court’s December 7, 2004 decision.

. This suggested method of proceeding was made by plaintiff and agreed to by defendant as a means of cutting down mounting litigation fees.

. Two issues of material importance in this case are plaintiffs contributions and whether and how to apportion tax liability claimed by the IRS due to the excess compensation payments made to both plaintiff and defendant. In the divorce trial, defendant minimized plaintiffs participation in Wechsler and Co., Inc. to support his position that after 30 years of marriage plaintiff is not entitled to equally share in the marital estate. Plaintiff claims that after testimony was concluded in this case, defendant testified in the tax court proceeding that the six figure income plaintiff earned from Wechsler and Co., Inc. over the years was justified due to the contributions plaintiff made to the business.

. Plaintiff claims the marital assets exceed $123 million in her statement of proposed disposition.

. Defendant sought court permission due to the lateness of the applications. (CPLR 3101 [d].)