[5 NYS3d 683]

L.P., Plaintiff, v R.P., Defendant.

Supreme Court, Westchester County, March 16, 2015

**APPEARANCES OF COUNSEL**

*Barton LLP*, New York City (*Orrit Hershkovitz* of counsel), for plaintiff.

*Lieberman & LeBovit*, Yorktown Heights (*Mitchell Lieberman* of counsel), for defendant.

*Jo-Ann Cambareri*, Tarrytown, *Joan Salwen*, Scarsdale, and *Candi Fulop*, White Plains, Attorneys for the Children.

**OPINION OF THE COURT**

PAUL I. MARX, J.

It is ordered that the motion is disposed as follows:

## Background

On December 11, 2014, the parties settled all issues in their matrimonial action and placed the terms of the settlement on the record before the undersigned. Orrit Hershkovitz, Esq., of Barton LLP, represented plaintiff, and Mitchell P. Lieberman, Esq., of Lieberman & LeBovit, represented defendant in negotiating the stipulation of settlement. Both attorneys participated in placing the settlement on the record.

In the stipulation of settlement, the parties acknowledged obligations for fees owed to the Attorneys for the Children, with defendant also agreeing to pay up to $24,000 of the amount of plaintiff's 50% share of said fees. The parties further agreed that with regard to the fees of their own attorneys, "[n]either party will seek any fees from the other, no counsel fees, costs or expenses. They both agree to be responsible for [their] own counsel fees, costs and expenses." (Tr at 19, lines 16-20.)

Before the settlement was placed on the record, the court stated:

"My understanding is . . . the parties have now reached an agreement which will alleviate from me the obligation to write a post-trial decision and will also obviate from me the obligation to decide the pending fee application which was submitted by Mr. Lieberman in connection with my decision and order of November 26, 2014 which found Mrs. P. to be in contempt." (*Id.* at 2, lines 7-18.)

The court continued:

"Dr. P. and Mrs. P., I need both of you to pay close attention to what is about to be said. It's intended to be a full and final resolution of the property dispute and financial disputes that have arisen between the two of you in connection with your matrimonial action."

Defendant's attorney initiated the recitation of the stipulation as follows:

> "Your Honor, the parties have agreed to resolve all remaining issues in this case with the following stipulation it being understood that custody and access was already resolved in a so ordered stipulation before Your Honor on the third day of trial. The parties therefore as to all financial issues agree as follows." (*Id.* at 4, lines 8-17.)

Defense counsel then recited all of the terms of the parties' settlement. After the settlement was put on the record, the court inquired of plaintiff's counsel whether there was "[a]nything further with respect to the parties [sic] property or the stipulation?" (*Id.* at 23, lines 4-6.) Plaintiff's counsel responded: "No, Your Honor." (*Id.* at 23, line 7.) The court inquired further of plaintiff's counsel: "No clarifications, no additions?" (*Id.* at 23, lines 8-9.) Counsel replied: "Not that I'm aware of." (*Id.* at 23, lines 10-11.)

The court then allocuted the parties on the terms of the settlement. Each party agreed to the terms, including the counsel fee provisions. The proceedings were concluded without plaintiff's counsel informing the defendant or his counsel of her intention to seek counsel fees against defendant.

On January 16, 2015, over a month after the parties' settlement, Barton LLP moved by order to show cause seeking an order directing defendant to pay "an amount no less than $230,000" in interim counsel fees and costs incurred by plaintiff. By cross motion dated February 5, 2015, defendant moved for an award of sanctions against Barton LLP and Orrit Hershkovitz, Esq. for making a frivolous counsel fee application and for the costs and expenses, including attorney's fees, for responding to the fee application.

The parties submitted proposed and counterproposed versions of the judgment of divorce and findings of fact and conclusions of law. The court has not signed the judgment of divorce, pending the outcome of the instant motions.

## Discussion

### Motion for Counsel Fees

Plaintiff's counsel seeks an award of interim counsel fees and costs pursuant to Domestic Relations Law § 237 (a), which provides, in relevant part:

"(a) In any action or proceeding brought . . . (3) for a divorce . . . the court may direct either spouse . . . to pay counsel fees and fees and expenses of experts directly to the attorney of the other spouse to enable the other party to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties. There shall be [a] rebuttable presumption that counsel fees shall be awarded to the less monied spouse. In exercising the court's discretion, the court shall seek to assure that each party shall be adequately represented and that where fees and expenses are to be awarded, they shall be awarded on a timely basis, pendente lite, so as to enable adequate representation from the commencement of the proceeding. Applications for the award of fees and expenses may be made at any time or times prior to final judgment. Both parties to the action or proceeding and their respective attorneys, shall file an affidavit with the court detailing the financial agreement between the party and the attorney. Such affidavit shall include the amount of any retainer, the amounts paid and still owing thereunder, the hourly amount charged by the attorney, the amounts paid, or to be paid, any experts, and any additional costs, disbursements or expenses. Any applications for fees and expenses may be maintained by the attorney for either spouse in his own name in the same proceeding. Payment of any retainer fees to the attorney for the petitioning party shall not preclude any awards of fees and expenses to an applicant which would otherwise be allowed under this section."

Domestic Relations Law § 237 (a) has a "long legislative and decisional law" history, dating as far back as 1858. (*O'Shea v O'Shea*, 93 NY2d 187, 190 [1999].) The general purpose behind the statute is to allow trial courts to allocate payment of counsel fees between the parties in a divorce action to enable the less monied spouse to obtain adequate legal representation to prosecute or defend the action. As the Court of Appeals has charged, "[t]he courts are to see to it that the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant's wallet." (*Id.*)

Throughout its long history, Domestic Relations Law § 237 (a) has been amended in several important respects that are

relevant to the instant fee application. Many of the amendments, while designed to provide greater protections to the less monied spouse, have also inured to the benefit of their counsel. For example, the statute allows the court to order payment of counsel fees to be made "directly to the attorney of the other spouse"; there is a "rebuttable presumption that counsel fees shall be awarded to the less monied spouse"; and a fee application may be made "at any time or times prior to final judgment." (Domestic Relations Law § 237 [a].) Most notably, however, the statute provides that an "application[ ] for fees and expenses may be maintained by the attorney for either spouse in his own name in the same proceeding." (*Id.*) The latter provision gives the attorney an independent right to proceed against the monied spouse for an award of fees in a matrimonial action. (*Cf. Sassower v Barone*, 85 AD2d 81 [2d Dept 1982] [prior to the 1978 amendment to Domestic Relations Law § 237 (a) conferring an independent right on attorneys to seek fees in their own name, Sassower was compelled to bring a plenary action against her client (based on her retainer agreement) and against the other spouse (based upon a theory of necessaries) after the parties settled and the client withdrew her appeal of the counsel fee award].)

Relying upon the independent right of counsel to seek fees, plaintiff's counsel submits the instant application. Plaintiff's counsel argues that "[p]laintiff clearly does not have the ability to pay the enormous sums owed to her counsel,[1] and the Attorneys for the Children [and] should be awarded the fees and expenses requested on that basis alone." (Plaintiff's counsel's mem of law at 3.) Counsel recounts the length of the trial and the difficulty settling the case. She further states that defendant "unnecessarily prolonged this litigation and caused Plaintiff to incur unnecessary fees by bringing baseless applications, misrepresenting the relevant facts to Plaintiff and this Court, negotiating in bad faith, interfering or attempting to interfere with Plaintiff's access to the parties' children, and refusing to cooperate with and delaying discovery." (*Id.* at 4.) Counsel concludes that "[p]laintiff should be awarded counsel fees and expenses of at least $230,000."[2] (*Id.*)

---

1. The court agrees that fees of nearly a quarter of a million dollars is enormous, particularly when incurred over a seven-month time period.

2. Plaintiff's counsel alternates between presenting the fee award as owing to plaintiff and asserting her own standing as counsel to bring the ap-

Plaintiff's counsel then raises the issue of her law firm's standing to seek fees in the face of the parties' agreement to not seek fees from each other.[3] Plaintiff's counsel contends that her application is not barred by plaintiff's waiver of her right to seek counsel fees in the parties' stipulation of settlement. Counsel asserts that "[w]hile the parties agreed to be responsible for their own fees, the Appellate Division, Second Department, made clear in *Gregory* that a stipulation of settlement is not binding upon the attorney for a litigant, who was not a party to the stipulation." (Plaintiff's counsel's mem of law at 4, citing *Matter of Gregory v Gregory*, 109 AD3d 616, 618 [2d Dept 2013].) Counsel also relies upon *Maher v Maher* (47 Misc 3d 228 [Sup Ct, Rockland County 2014]), and more generally upon *Frankel v Frankel* (2 NY3d 601 [2004]).

Defendant objects to plaintiff's counsel's fee application and cross-moves for sanctions. He contends that plaintiff's counsel "waived any claim to seek fees by participating in and being a party to the December 11, 2014 stipulation and failing to raise the claim at the time the stipulation was entered with their knowledge, acquiescence and connivance." (Notice of cross motion, aff of Mitchell P. Lieberman, ¶ 2 [iii].) Defendant argues that the cases upon which plaintiff's counsel relies are inapposite because Ms. Hershkovitz was plaintiff's counsel "for the months leading up to trial, the entire trial and when the resolution was placed on the record in open court on December 11, 2014." (Defendant's mem of law at 4.)

*Gregory* involved an application for child support and maintenance sought by the wife/petitioner in the Family Court. The court granted the application and advised petitioner to move for attorney's fees. Counsel for the wife moved for fees against the husband based upon Family Court Act § 438, which provides that "the court may allow counsel fees at any stage of the proceeding, to the attorney representing the spouse, former spouse or person on behalf of children." Prior to disposition of counsel's motion, the wife, without the knowledge or involvement of her counsel, entered into a written stipulation of settlement with her husband, which provided that each of them shall pay their own counsel fees and indemnify and hold each

plication. The apparent confusion in counsel's presentation undoubtedly arises from her implicit recognition that her right to collect her fees from the non-client spouse depends on her client's entitlement to such fees.

**3.** Except, as noted above, for the fees owed to the Attorneys for the Children, of which defendant agreed to pay a portion for plaintiff.

other harmless against any claims for fees. Thereafter, the Family Court denied counsel's fee application on the ground that it was barred by the terms of the stipulation of settlement. The Appellate Division reversed, finding that counsel, who was discharged by the wife, was not bound by a stipulation to which he was not a party. (*Gregory* at 617; *see also* Alan D. Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, C237:3 ["(a) reconciliation or settlement between the parties does not, by itself, preclude an application for counsel fees made within the context of a pending action"].) The Appellate Division also determined that the indemnification provision in the parties' stipulation did not release the husband, who was the monied spouse, from any obligation he had to pay his wife's counsel fees.

Although *Gregory* generally provides that settlement alone does not bar a fee application by discharged counsel, the case does not support plaintiff's counsel's fee application because *Gregory* differs from this case in three critical respects. First, *Gregory* involved a support proceeding under the Family Court Act, in which counsel for the wife was specifically authorized by the Court to move for an award of fees against the husband pursuant to Family Court Act § 438. The present fee application is brought pursuant to Domestic Relations Law § 237 (a) without this court's direction or authorization.[4] Although some provisions of the Domestic Relations Law mirror those of the Family Court Act, the counsel fees provisions contained in Domestic Relations Law § 237 (a) and Family Court Act § 438 are not among them. Second, the attorney in *Gregory* was discharged by his client. Third, the salient fact that distinguishes the two cases is that the attorney in *Gregory* was a complete stranger to, and ignorant of, the stipulation by which he was ostensibly deprived of the opportunity that was authorized by the court to obtain fees from the husband/respondent. In this case, although not a "party" to the stipulation of settlement in the technical sense, plaintiff's counsel negotiated the settlement and was present for, and participated in, placing the settlement on the record and the allocution of the parties as to the terms of the settlement. Thus, unlike the attorney in *Gregory*, plaintiff's counsel was not a stranger to the parties' fee waiver. Indeed, but for the settlement, plaintiff's counsel's fee

---

4. Indeed, the postsettlement application took the court by surprise.

application, which was raised almost daily during the trial, would have been addressed in the court's posttrial decision.[5]

Plaintiff's counsel also relies upon *Maher*, where the court considered a discharged attorney's right to seek fees from the other spouse following a settlement of the action negotiated by the attorney. As articulated by that court, the specific issues raised were:

> "(i) whether counsel has standing to seek counsel fees from the other party when the parties have signed an agreement stating that each is responsible for his or her own counsel fees and (ii) whether [counsel] is entitled to interim counsel fees when all issues of the action appear [sic] have been resolved between the parties and the matter is on the verge of being disposed, requiring no further litigation." (*Maher* at 230-231.)

Similar issues are presented here.

In *Maher*, the parties, acting through counsel, settled their divorce action and all ancillary issues and submitted a copy of the written stipulation of settlement to the court. The stipulation recited that "[t]he Wife has been represented by [her counsel] in connection with the negotiation, drafting and execution of this Agreement, and the Husband has been represented in connection with the negotiation, drafting and execution of this Agreement by [his counsel]." (*Id.* at 229.) The stipulation stated explicitly that "[e]ach party is responsible for their own attorneys' fees." (*Id.* [emphasis omitted].) Following the parties' execution of the stipulation of settlement, the wife discharged her counsel without cause. The wife's counsel then filed an application against the husband to recover counsel fees incurred by the wife in the divorce action.[6] Counsel contended that the court could consider his fee application because it had not yet signed the judgment of divorce.

Relying on *Gregory* to dispose of the first of the issues, the court in *Maher* stated that "the law is clear that simply because parties agree that they will not seek counsel fees from the other, an attorney is not barred from making an application for

---

**5.** Though counsel repeatedly requested fees during the trial, the court was not inclined to interrupt the proceedings for that ancillary issue, particularly since counsel had already received $50,000 as an advance retainer.

**6.** The right of a discharged attorney to seek fees under Domestic Relations Law § 237 was established in *Frankel*.

fees from the adverse spouse where appropriate." (*Maher* at 231.) The court then determined that counsel had standing to seek fees from the husband despite the explicit waiver by his former client in the stipulation of settlement, which counsel prepared, of her right to seek counsel fees against her spouse.

This court declines to follow *Maher* on this point, because this court does not believe that a counsel fee award was appropriate under the circumstances in *Maher*. The court in *Maher* seems not to have recognized a significant and dispositive factual distinction between its case and *Gregory*. The attorney in *Gregory* was ignorant of the client's waiver of counsel fees, which was the crux of the decision: "the stipulation of settlement executed by the petitioner and the respondent was not binding on [counsel], who was not a party to the stipulation." (*Gregory* at 617.) By contrast, counsel in *Maher* negotiated, drafted and participated in the execution of the parties' stipulation of settlement, which waived counsel fees. Thus, *Gregory* did not supply support for the court's counsel fee award.

In this case, plaintiff's counsel represented to the court when it inquired whether there were any "clarifications" or "additions" with respect to the stipulation that she was not aware of any. Plaintiff's counsel's decision to lie in the weeds and wait to file a fee application undermines the settlement of the action reached on December 11, 2014. At oral argument on the motions defendant's counsel represented to the court that his client would not have settled the action had he known plaintiff's counsel would seek a fee award against him. Plaintiff's counsel responded that she had no obligation to advise defendant or his counsel of her "statutory right" to seek fees. On this point, counsel is mistaken. Counsel did have an obligation to advise defendant and his attorney that she intended to exercise her right to seek fees, which appeared to have been disposed of by the terms of the parties' settlement. She did not do so. To allow plaintiff's counsel's fee application at this juncture threatens the global settlement.

This court finds that where, as here, counsel actively participates in a settlement of an action that includes the client's waiver of her right to seek fees from the other spouse, counsel must inform the parties of counsel's intention to seek fees prior to finalizing the settlement in order to preserve that right. To do otherwise would discourage settlements because the monied spouse, who believed that all aspects of the divorce had been settled, would be exposed to the possibility of a

substantial fee being awarded against him/her and would leave uncertain whether the agreement was, in fact, a final resolution. It simply cannot be the law that a party can be allowed to believe that all claims against him/her by his/her former spouse have been resolved, only to be subjected to claims by that spouse's counsel, who represented that all issues were resolved. Nor can it be the law that counsel can stand silently by while her client waives all claims for fees and then assert those very claims. To do so would create a trap for the unwary, allowing counsel to assert that "all issues" are resolved, only to surface later to assert his/her own claims.

Although Domestic Relations Law § 237 (a) provides that an application for fees may be brought by counsel in his or her own name at any time before the entry of judgment, this court does not believe that the legislature intended the result counsel seeks in this case. Indeed, the sponsor's memorandum in support of the amendment stated that its purpose was to provide a protective device for attorneys who were discharged without cause. The sponsor stated:

> "This measure provides that applications for counsel fees and expenses may be maintained by an attorney in the same matrimonial action wherein he has rendered services and has been subsequently discharged by his client. The purpose is to protect attorneys when they are discharged without cause from having their right to counsel fees relegated to a civil court action. Hereunder the claim for counsel fees may be kept alive in the matrimonial action. The attorney is given the right to bring such action in his own name." (Sponsor's Mem in Support, Bill Jacket, L 1978, ch 444, 1978 NY Legis Ann at 262.)

Correspondence from the Family Law Section of the New York State Bar Association, which requested the legislation, emphasizes the goal of the amendment to allow "applications for counsel fees and expenses [to] be maintained by an attorney in the same matrimonial action wherein he has rendered services and has been discharged without cause by his client. . . . thereby avoid having the claim remanded to another court and another judge for a decision." (Letter from Lester Wallman, Chairman, to Hon. Judah Gribetz, Counsel to the Governor, May 23, 1978, Bill Jacket, L 1978, ch 444.)

Clearly, the statute was also designed to ensure that fees payable to the non-monied spouse's attorney actually made

their way to that counsel.[7] Hence, when awarded by the court, fees could be made payable directly to the attorney or the attorney could seek fees in his/her own name.

Plaintiff's counsel waived her right to seek an award of counsel fees by remaining silent during the settlement proceedings as to her intent to seek fees. This court is not persuaded by plaintiff's counsel's argument that she was not obligated to advise the parties and this court that all aspects of the action had not been resolved. (*See generally Sadofsky v Sadofsky*, 78 AD2d 520 [2d Dept 1980] [the parties reconciled during the course of the trial and entered into a stipulation of settlement, which was placed on the record. Immediately thereafter, the wife's attorney requested a fee award. Initially, there was no objection made to the attorney's fee request by either party or counsel for the husband; however, the parties later discharged their attorneys and contested the fee application]; *Berson v Berson*, 149 Misc 2d 523, 529 [Fam Ct, Rockland County 1990] ["(t)o permit applications for counsel fees to be made after such a stipulation has been entered on the record would discourage settlements and leave open the possibility of future litigation. The purpose of a stipulation of settlement put on the record in open court is to finally settle all aspects of the proceedings before the court. Had counsel sought fees in these proceedings, it should have been brought up and disposed of in court on the date the matter was settled"]; *see also* 3 Callaghan's Family Court Law and Practice in New York § 16:59.) The rule that plaintiff's counsel advocates, allowing her to lie in wait and

---

**7.** Further correspondence contained in the legislative history of the amendment illuminates this purpose. The May 31, 1978 letter to Counsel for the Governor from the Chairman of the New York City Bar Association's Committee on State Legislation stated that

"[t]he bill would permit the Court to order the payment of counsel fees by the husband 'directly to the wife's attorney' and would permit the attorney to make an application in his own name . . . . The bill is designed to give attorneys standing to collect fees due and owing to them in connection with matrimonial proceedings instead of the present system by which the fees must first be paid to the wife who then turns them over to her lawyer. Presumably, there are instances where the attorney must then sue his former client to recover fees which already have been awarded to him by the court. If an award of attorneys' fees is made to a wife, there appears to be no good reason why the attorney may not get the money directly or make application for it in his own name." (Letter from John L. Amabile, Chairman, to Hon. Judah Gribetz, Counsel to the Governor, May 31, 1978, Bill Jacket, L 1978, ch 444.)

ambush defendant, is one that would impede settlements and certainly imperils the settlement in this case. As the Court of Appeals stated in *Frankel*, an application for counsel fees is one of the "other equities that affect the outcome" of an action and should thus be included in a global settlement. (*Frankel* at 607.)

Accordingly, the court denies plaintiff's counsel's motion for counsel fees.

Cross Motion for Sanctions and Counsel Fees

Defendant moves pursuant to Rules of the Chief Administrator of the Courts (22 NYCRR) § 130-1.1 (c) for an award of sanctions against plaintiff's counsel for filing a frivolous motion and for delaying the resolution of this action. (Affirmation of Mitchell P. Lieberman at 1.) Section 130-1.1 (c) provides that

> "conduct is frivolous if:
>
> "(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
>
> "(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
>
> "(3) it asserts material factual statements that are false."

Defendant contends that plaintiff's counsel's motion is frivolous because there is no legal basis for her position.

This court determines that plaintiff's counsel's motion was not frivolous or unsupported by a reasonable argument based on existing case law. Although this court distinguished the cases cited by plaintiff's counsel, including *Maher*, which lends the greatest support for her motion, counsel's position was not wholly unsupported by the law.

Accordingly, the court denies defendant's cross motion for sanctions and counsel fees on the cross motion.